# GIVHAN *v.* WESTERN LINE CONSOLIDATED SCHOOL DISTRICT ET AL.

No. 77–1051.   Argued November 7, 1978—Decided January 9, 1979

REHNQUIST, J., delivered the opinion for a unanimous Court. STEVENS, J., filed a concurring opinion, *post*, p. 417.

*David Rubin* argued the cause for petitioner. With him on the briefs were *Stephen J. Pollak, Richard M. Sharp,* and *Fred L. Banks.*

*J. Robertshaw* argued the cause and filed a brief for respondents.[*]

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner Bessie Givhan was dismissed from her employment as a junior high English teacher at the end of the 1970–1971 school year.[1] At the time of petitioner's termination, respondent Western Line Consolidated School District was the subject of a desegregation order entered by the United States District Court for the Northern District of Mississippi. Petitioner filed a complaint in intervention in the desegregation action, seeking reinstatement on the dual grounds that

---

[*]Briefs of *amici curiae* urging reversal were filed by *David M. Rabban* and *William Van Alstyne* for the American Association of University Professors, and by *William A. Dobrovir* and *Andra N. Oakes* for the Fund for Constitutional Government and the Government Accountability Project.

[1] In a letter to petitioner, dated July 28, 1971, District Superintendent C. L. Morris gave the following reasons for the decision not to renew her contract:

"(1) [A] flat refusal to administer standardized national tests to the pupils in your charge; (2) an announced intention not to co-operate with the administration of the Glen Allan Attendance Center; (3) and an antagonistic and hostile attitude to the administration of the Glen Allan Attendance Center demonstrated throughout the school year."

nonrenewal of her contract violated the rule laid down by the Court of Appeals for the Fifth Circuit in *Singleton* v. *Jackson Municipal Separate School District,* 419 F. 2d 1211 (1969), rev'd and remanded *sub nom. Carter* v. *West Feliciana Parish School Board,* 396 U. S. 290 (1970), on remand, 425 F. 2d 1211 (1970), and infringed her right of free speech secured by the First and Fourteenth Amendments of the United States Constitution. In an effort to show that its decision was justified, respondent School District introduced evidence of, among other things,[2] a series of private encounters between petitioner and the school principal in which petitioner allegedly made "petty and unreasonable demands" in a manner variously described by the principal as "insulting," "hostile," "loud," and "arrogant." After a two-day bench trial, the District Court held that petitioner's termination had violated the First Amendment. Finding that petitioner had made "demands" on but two occasions and that those demands

---

[2] In addition to the reasons set out in the District Superintendent's termination letter to petitioner, n. 1, *supra,* the School District advanced several other justifications for its decision not to rehire petitioner. The Court of Appeals dealt with these allegations in a footnote:

"Appellants also sought to establish these other bases for the decision not to rehire: (1) that Givhan 'downgraded' the papers of white students; (2) that she was one of a number of teachers who walked out of a meeting about desegregation in the fall of 1969 and attempted to disrupt it by blowing automobile horns outside the gymnasium; (3) that the school district had received a threat by Givhan and other teachers not to return to work when schools reopened on a unitary basis in February, 1970; and (4) that Givhan had protected a student during a weapons shakedown at Riverside in March, 1970, by concealing a student's knife until completion of a search. The evidence on the first three of these points was inconclusive and the district judge did not clearly err in rejecting or ignoring it. Givhan admitted the fourth incident, but the district judge properly rejected that as a justification for her not being rehired, as there was no evidence that [the principal] relied on it in making his recommendation." *Ayers* v. *Western Line Consol. School Dist.,* 555 F. 2d 1309, 1313 n. 7 (CA5 1977).

"were neither 'petty' nor 'unreasonable,' insomuch as all the complaints in question involved employment policies and practices at [the] school which [petitioner] conceived to be racially discriminatory in purpose or effect," the District Court concluded that "the primary reason for the school district's failure to renew [petitioner's] contract was her criticism of the policies and practices of the school district, especially the school to which she was assigned to teach." App. to Pet. for Cert. 35a. Accordingly, the District Court held that the dismissal violated petitioner's First Amendment rights, as enunciated in *Perry* v. *Sindermann,* 408 U. S. 593 (1972), and *Pickering* v. *Board of Education,* 391 U. S. 563 (1968), and ordered her reinstatement.

The Court of Appeals for the Fifth Circuit reversed. *Ayers* v. *Western Line Consol. School Dist.,* 555 F. 2d 1309 (1977). Although it found the District Court's findings not clearly erroneous, the Court of Appeals concluded that because petitioner had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment. Support for this proposition was thought to be derived from *Pickering, supra, Perry, supra,* and *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274 (1977), which were found to contain "[t]he strong implication . . . that private expression by a public employee is not constitutionally protected." 555 F. 2d, at 1318. The Court of Appeals also concluded that there is no constitutional right to "press even 'good' ideas on an unwilling recipient," saying that to afford public employees the right to such private expression "would in effect force school principals to be ombudsmen, for damnable as well as laudable expressions." *Id.,* at 1319. We are unable to agree that private expression of one's views is beyond constitutional protection, and therefore reverse the Court of Appeals' judgment and remand the case so that it may consider the contentions of the parties freed from this erroneous view of the First Amendment.

This Court's decisions in *Pickering, Perry,* and *Mt. Healthy* do not support the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly. While those cases each arose in the context of a public employee's public expression, the rule to be derived from them is not dependent on that largely coincidental fact.

In *Pickering* a teacher was discharged for publicly criticizing, in a letter published in a local newspaper, the school board's handling of prior bond issue proposals and its subsequent allocation of financial resources between the schools' educational and athletic programs. Noting that the free speech rights of public employees are not absolute, the Court held that in determining whether a government employee's speech is constitutionally protected, "the interests of the [employee], as a citizen, in commenting upon matters of public concern" must be balanced against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U. S., at 568. The Court concluded that under the circumstances of that case "the interest of the school administration in limiting teachers' opportunities to contribute to public debate [was] not significantly greater than its interest in limiting a similar contribution by any member of the general public." *Id.,* at 573. Here the opinion of the Court of Appeals may be read to turn in part on its view that the working relationship between principal and teacher is significantly different from the relationship between the parties in *Pickering,*[3] as is evidenced by

---

[3] The *Pickering* Court's decision upholding a teacher's First Amendment claim was influenced by the fact that the teacher's public statements had not adversely affected his working relationship with the objects of his criticism:

"The statements [were] in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by

its reference to its own opinion in *Abbott* v. *Thetford,* 534 F. 2d 1101 (1976) (en banc), cert. denied, 430 U. S. 954 (1977). But we do not feel confident that the Court of Appeals' decision would have been placed on that ground notwithstanding its view that the First Amendment does not require the same sort of *Pickering* balancing for the private expression of a public employee as it does for public expression.[4]

*Perry* and *Mt. Healthy* arose out of similar disputes between teachers and their public employers. As we have noted, however, the fact that each of these cases involved public expression by the employee was not critical to the decision. Nor is the Court of Appeals' view supported by the "captive audience" rationale. Having opened his office door to petitioner, the principal was hardly in a position to argue that he was the "*unwilling* recipient" of her views.

The First Amendment forbids abridgment of the "freedom of speech." Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather

immediate superiors or harmony among coworkers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." 391 U. S., at 569–570.

[4] Although the First Amendment's protection of government employees extends to private as well as public expression, striking the *Pickering* balance in each context may involve different considerations. When a teacher speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they "in any way either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the schools generally." *Id.,* at 572–573. Private expression, however, may in some situations bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.

than to spread his views before the public. We decline to adopt such a view of the First Amendment.

While this case was pending on appeal to the Court of Appeals, *Mt. Healthy City Bd. of Ed.* v. *Doyle, supra,* was decided. In that case this Court rejected the view that a public employee must be reinstated whenever constitutionally protected conduct plays a "substantial" part in the employer's decision to terminate. Such a rule would require reinstatement of employees that the public employer would have dismissed even if the constitutionally protected conduct had not occurred and, consequently, "could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." 429 U. S., at 285. Thus, the Court held that once the employee has shown that his constitutionally protected conduct played a "substantial" role in the employer's decision not to rehire him, the employer is entitled to show "by a preponderance of the evidence that it would have reached the same decision as to [the employee's] re-employment even in the absence of the protected conduct." *Id.,* at 287.

The Court of Appeals in the instant case rejected respondents' *Mt. Healthy* claim that the decision to terminate petitioner would have been made even if her encounters with the principal had never occurred:

> "The [trial] court did not make an express finding as to whether the same decision would have been made, but on this record the [respondents] do not, and seriously cannot, argue that the same decision would have been made without regard to the 'demands.' Appellants seem to argue that the preponderance of the evidence shows that the same decision would have been justified, but that is not the same as proving that the same decision would have been made. . . . Therefore [respondents] failed to make a successful 'same decision anyway' defense." 555 F. 2d, at 1315.

Since this case was tried before *Mt. Healthy* was decided, it is not surprising that respondents did not attempt to prove in the District Court that the decision not to rehire petitioner would have been made even absent consideration of her "demands." Thus, the case came to the Court of Appeals in very much the same posture as *Mt. Healthy* was presented to this Court. And while the District Court found that petitioner's "criticism" was the "primary" reason for the School District's failure to rehire her, it did not find that she would have been rehired *but for* her criticism. Respondents' *Mt. Healthy* claim called for a factual determination which could not, on this record, be resolved by the Court of Appeals.[5]

Accordingly, the judgment of the Court of Appeals is vacated insofar as it relates to petitioner, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

MR. JUSTICE STEVENS, concurring.

Because this Court's opinion in *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274, had not been announced when the District Court decided this case, it did not expressly find that respondents would have rehired petitioner if she had not engaged in constitutionally protected conduct. The District Court did find, however, that petitioner's protected conduct was the "primary" reason for respondents' decision.[*] The

---

[5] We cannot agree with the Court of Appeals that the record in this case does not admit of the argument that petitioner would have been terminated regardless of her "demands." Even absent consideration of petitioner's private encounters with the principal, a decision to terminate based on the reasons detailed at nn. 1 and 2, *supra,* would hardly strike us as surprising. Additionally, in his letter to petitioner setting forth the reasons for her termination, District Superintendent Morris makes no mention of petitioner's "demands" and "criticism." See n. 1, *supra.*

[*]App. to Pet. for Cert. 35a. See also *id.,* at 36a, where the District Court stated that petitioner's protected activity was "almost entirely" responsible for her termination.

Court of Appeals regarded that finding as foreclosing respondents' *Mt. Healthy* claim. In essence, the Court of Appeals concluded that the District Court would have made an appropriate finding on the issue if it had had access to our *Mt. Healthy* opinion.

My understanding of the District Court's finding is the same as the Court of Appeals'. Nevertheless, I agree that the District Court should have the opportunity to decide whether there is any need for further proceedings on the issue. If that court regards the present record as adequate to enable it to supplement its original findings without taking additional evidence, it is free to do so. On that understanding, I join the Court's opinion.