OPINION OF THE COURT
Morrie Slifkin, J.
In an action seeking a declaratory judgment and injunctive relief, plaintiffs move for summary judgment.
The issue in this case is whether the respondents, Board of *576 Education of the East Ramapo Central School District (hereinafter referred to as "Board”) and Robert A. Utter, superintendent of the school, district (hereinafter referred to as "Utter”), may impose restrictions upon the manner in which individual teachers communicate with parents of their students.
The pertinent facts are not in dispute. This action was commenced by the East Ramapo Teachers Association (hereinafter referred to as "ERTA”) and its president, Richard Mullin. ERTA is the collective bargaining agent for the bargaining unit of professional employees in the East Ramapo Central School District (hereinafter referred to as "District”). Mullin is its president, as well as being an individual teacher affected by the subject of this lawsuit.
In March of 1977, ERTA announced its sponsorship of what it called a "success card” program. The announcement dated March 24, 1977, and addressed to "All East Ramapo Teachers”, stated that the program implemented "a new procedure for communicating positive information to parents as part of an effort to improve teacher-relationships with the community.” The postcard-sized cards have the bold heading "SUCCESS CARD!” Underneath the heading is imprinted the words, "I thought you’d like to know:”, below which are seven lines upon which the message is to be written. Immediately below these lines, in smaller type than the other printing, is the message: "A service provided by the East Ramapo Teachers Association with the New York Educators Association and the National Educational Association.”
The March 24, 1977 announcement gives examples of the commendable achievements about which the card can be used, noting that the "Interim Reports” utilized by the District "usually convey negative information, and they only appear 4 times a year.” After explaining where to obtain the cards and how to use them, the announcement concludes with the reminder that "these cards are to be used only for positive messages” (emphasis in original).
By letter dated March 31, 1977, Harold L. Block, then president of the Board, directed that ERTA discontinue the use of the "success cards” immediately. The reasons given therefor were:
(1) communications to parents should deal with all aspects of a student’s performances, not just positive ones; -
*577 (2) communications should not be limited to teachers who are members of ERTA;
(3) usurpation of the district’s function;
(4) confidentiality being violated by use of postcards and by interference in student-teacher-parent relationship by union, and
(5) "for other reasons not herein set forth.”
A follow-up letter dated April 12, 1977 from Utter to all faculty members, referred to the Block letter, but urged teachers to continue to write to parents about positive aspects of their children’s achievements: "What I personally disagree with is the use of the Teachers Association label on the cards. To me this is not appropriate.”
ERTA acceded to the Board’s directive and brought this suit seeking a judicial declaration that the Board’s action violated Federal and State constitutional guarantees of free speech and seeking an injunction prohibiting defendants from interfering with implementation of the "success card” program. That the letters from the Board and Utter constituted implied threats of disciplinary action and requiring plaintiffs to cease the program and necessitating the bringing of suit for relief is not questioned by defendants.
On the motion for summary judgment, plaintiffs submitted an affidavit from a teacher in the District who stated that her method of communicating with parents was by writing on plain paper and by telephone contact. Another teacher developed her own card by which she communicates with parents. None of these communications is subject to prior approval by school administration. An affidavit from Mullin repeats this assertion, claiming that the various ways in which teachers communicate with parents have never been the subject of prior school administration approval. According to Mullin, the District requires report cards to go out every 10 weeks and interim computer reports every five weeks. These interim reports are only for negative comments. The success cards were meant to supplement prescribed communication and not to displace them.
In opposition to the motion, Jack Anderson, the present District Superintendent, elaborated upon the reasons for initiating against the success card program as initially set forth in the Board’s letter. In addition, he expressed the belief that ERTA’s main objective was to achieve good public relations *578 for the union. An affidavit from Alan L. Weissberg, Director of Secondary Education of the District, echoes Anderson’s argument, noting that "the establishment of educational policy is within the sole province of the Board of Education and school administration. It is of no consequence that the Teachers Union may feel that additional evaluation reporting devices are necessary.” Weissberg disputes Mullin’s contention that interim reports are only used for negative comments, appending the type of report used in one of the junior high schools to prove his point.
Although the papers submitted by plaintiffs on motion avoid confronting this issue head on, there is no doubt that the sole question with which the court is faced is whether the defendants’ actions constitute an unlawful interference with plaintiff’s constitutionally guaranteed right of free speech. Defendants’ contention that plaintiffs have abandoned this issue is belied by the memorandum of law submitted on plaintiffs’ behalf, which memorandum treats the matter as one of constitutional dimension.
That teachers are protected by constitutional guarantee of free speech is beyond cavil. (Pickering v Board of Educ., 391 US 563.) The situations giving rise to judicial enforcement of this guarantee are many, e.g., publication in a newspaper of a teacher’s letter critical of school board’s allocation of funds (Pickering v Board of Educ., supra), membership in the Communist Party (Keyishian v Board of Regents, 385 US 589), the wearing of black armbands in classroom in silent protest (Tinker v Des Moines School Dist., 393 US 503; James v Board of Educ., 461 F2d 566), religious interference with right to teach a scientific theory (Epperson v Arkansas, 393 US 97), termination of teacher after criticism of school district expressed to principal in private (Givhan v Western Line Cons. School, 439 US 410). However, as recognized by both parties to this action, a teacher’s right of free speech is not without limits. Although the cases cited above are not identical in their facts to this case, they, and others like them, offer guidelines which suggest when the right of free speech must give way to a greater right.
The Pickering decision (supra, p 568) clearly points out that there must be a balance arrived at between the teacher’s interest "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs *579 through its employees.” In upholding the teacher’s right to engage in public discourse about the school board’s allocation of funds, the Supreme Court noted that "The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher” (Pickering v Board of Educ., supra, at pp 569-570). In the same light is the following from Matter of Puentes v Board of Educ. (24 NY2d 996, 999): "Concededly, petitioner’s direct teaching and in-class performance were correct and were not affected by the writing or sending of the letter.”
In again coming down on the side of free expression, the Supreme Court in Tinker (supra, at p 509) noted that: "In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in of the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,’ the prohibition cannot be sustained.” The New York courts are equally zealous in regard to a teacher’s freedom of speech: "Where the dismissal of, or denial of tenure to, a teacher constitutes a plain interference with the First Amendment rights, such action cannot stand unless it can be shown that regulation of the conduct in question has a clear relationship to an overriding interest in the maintenance of an efficient educational system and that the action by the school board was motivated by a desire to benefit the system rather than to interfere with the exercise of constitutional rights.” (Tischler v Board of Educ., 37 AD2d 261, 264.)
The facts presented to this court establish beyond peradventure that the individual plaintiff was acting in his professional capacity when using or intending to use the success cards. Communication with parents about the achievements of their children while in school is one of the occupational functions of the teacher. This is not an area of expression that occurs coincidentally with the teacher’s educational function; it is part and parcel of that function. Certainly, if a teacher did not strive to communicate with a student’s parents, he or she would be considered remiss in performing his or her profes *580 sional duties. This factor distinguishes this case from the operative facts of most of the cases relied on by plaintiffs.
Since communication with parents is admittedly fundamental to the educational process, it comes within the responsibility imposed upon the administrators by statute with respect to management and control of the educational affairs of the District (see Education Law, §§ 1709, 1711). They are the ones who, in the first instance, have the duty to regulate the exchange of information between parent and teacher. The defendants did not bar the exchange of information. They merely prohibited an arbitrary, uniform and somewhat rigid device, the technique of which was defined by a labor union, a body to whom the defendants’ functions had not been delegated. This court fails to see how such restriction invades the teachers’ constitutional right to freedom of speech in any meaningful way. When the teachers’ rights are balanced against the duty of defendants to promote the efficient operation of the schools, the claim of free expression must fall. The court finds it somewhat ironic that the teachers’ advocacy of the success card program is brought under the claim of free speech. In effect, by using the cards, the teachers are allowing their choice of communication to be restricted by ERTA’s specifications as to how the cards are to be used. As was stated by Judge Meskill in East Hartford Educ. Assn. v Board of Educ. (562 F2d 838, 859): "The existence of alternative, effective means of communication, while not conclusive, is a factor to be considered in assessing the validity of a regulation of expressive conduct. Connecticut State Fed’n of Teachers v. Board of Education, 538 F.2d 471, 481-82 (2d Cir. 1976).”
The court notes that a companion case, involving the very same program, was recently decided in Suffolk County Supreme Court (Deer Park Teachers Assn. v Board of Educ., No. 78-21313, Baisley, J.). In upholding defendants’ right to halt the program, Judge Baisley stated the following: "The Court concludes that a Success Card program, not uniformly administered, dependent on a quota, devoid of any objective criteria and administered in part in the classroom, utilizing information gained solely as a result of the teacher-pupil relationship, poses an inherent threat to the efficiency and integrity of the defendant School Districts’ uniform evaluative system which is based on established and recognized objective criteria, in addition to posing a threat to the efficient discharge or other obligations imposed on defendant by law.”
*581 This court arrives at the same conclusion.
Although defendants did not cross-move for summary judgment, they do ask for such relief in their memorandum of law. The court is convinced that the parties have laid bare their proof on the motion. As indicated by the decision herein, nothing has been presented which would justify the relief sought by plaintiffs. Consequently, the court denies plaintiff’s application and in its discretion, grants summary judgment to defendants.