385 So.2d 25 (1980)
Patrick M. CALLAGHAN
v.
DEPARTMENT OF FIRE.
No. 11068.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
*26 Michael A. Starks, Deputy City Atty., New Orleans, Salvador Anzelmo, Acting City Atty., New Orleans, for defendant-appellee.
Barker, Boudreaux, Lamy, Gardner & Foley, Louis L. Robein, Jr., New Orleans, for plaintiff.
Before BOUTALL, GARRISON and BARRY, JJ.
GARRISON, Judge.
This is an appeal by the City of New Orleans from a decision rendered by the City Civil Service Commission. The Commission upheld the findings of two lower administrative hearings that fireman Patrick M. Callaghan was guilty of violating Section 13:01 of the Regulations of the Fire Department by failing to apologize when ordered to do so by his superior in rank, Fire Superintendent, William J. McCrossen. The Fire Superintendent dismissed Callaghan for his refusal to obey a direct order to apologize. The Commission reversed the dismissal, reinstating Callaghan as of the date of the first administrative hearing, with back pay, but without overtime, and subject to a credit for any wages earned by Callaghan during the period of his suspension and later dismissal. The panel further condemned Callaghan to work for a period of twenty-four hours without pay. From that decision, which we now affirm and amend, the City of New Orleans appeals.
On September 22, 1978, Callaghan was engaged in a private discussion with Captain Joseph Brouillette and District Chief Eugene Ravain. The topic of discussion was the low service rating given to Callaghan by Brouillette, which Callaghan believed to be the result of an existing personality conflict between the two men. Callaghan was asked why he disliked Brouillette. In response thereto, Callaghan stated that he disliked Brouillette because of a previous incident which the City states that Callaghan described as Brouillette's abandonment of his men in a burning building. Although Callaghan repeatedly stated at the administrative hearing that he was not charging and did not formally charge, Brouillette with misconduct, Brouillette took umbrage with the remark and charged Callaghan with making a false report.
At an administrative hearing on November 15, 1978, Fire Superintendent William J. McCrossen ordered Callaghan to apologize to Brouillette. When Callaghan refused to apologize, McCrossen charged the fireman with a violation of 13:01 of the Regulations of the New Orleans Fire Department:
"Section 13:01 General Orders
Obedience to the orders of a superior in rank must be faithfully observed, and any member offending in this regard shall be held strictly accountable."
McCrossen suspended Callaghan indefinitely.
A second administrative hearing was held on December 15, 1978, at which time Callaghan again refused to obey McCrossen's order to apologize. As a result of this refusal, McCrossen dismissed Callaghan.
At the outset we note that the following facts are undisputed by the parties:
1. That Chief McCrossen ordered Callaghan to apologize.
2. That Callaghan refused to apologize.
*27 3. That the remark to which Brouillette took umbrage was made during the course of a private conversation.
In Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979), the United States Supreme Court stated:
"The First Amendment forbids abridgment of the `freedom of speech.' Neither the Amendment itself nor our decision indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public. We decline to adopt such a view of the First Amendment."
In Givhan, a public school teacher was terminated as a result of, "among other things, a series of private encounters between petitioner and the school principal, in which petitioner allegedly made `petty and unreasonable demands' in a manner variously described by the principal as `insulting,' `hostile,' `loud,' and `arrogant.'" (99 S.Ct. at 695).
By virtue of the First and Fourteenth Amendment to the U.S. Constitution, as well as Article 1 § 7 of the Louisiana Constitution of 1974, we find Givhan to be controlling in the instant appeal so that Patrick M. Callaghan's remark, relating to Department policies, procedures, and his own employee evaluation by Captain Brouillette, made in the course of private conversation with his employers, is protected speech for which he cannot be penalized.
The second action for which Callaghan was penalized was his failure to obey a direct order to apologize, which the Civil Service Commission found to be a violation of Section 13:01 of the Regulations of the Fire Department:
"Obedience to orders of a superior must be faithfully observed, and any member offending in this regard must be held strictly accountable."
As discussed above, the order given by Superintendent McCrossen had no reasonable basis in law. Thus, Callaghan cannot be penalized for failing to follow an order having no reasonable basis in the law.[1] Neither the Fire Department, the Civil Service Commission, nor any court in the land has the jurisdiction to enforce "good manners." Such matters are better left to the province of Amy Vanderbilt and Emily Post. Under our Code, "good manners" fall within the ambit of imperfect obligations:
"If the duty created by the obligation operates only on the moral sense, without being enforced by positive law, it is called an imperfect obligation, and creates no right of action, nor has it any legal operation. The duty of exercising gratitude, charity, and the other merely moral duties, is an example of this kind of operation." C.C. Art. 1757(1)
In so holding, this Court is not required to reach the issue of whether the regulation in question is void for vagueness.
The last issue to be reached by this court is the question of penalties assessed against Patrick Callaghan. Callaghan was penalized by being reinstated without overtime, subject to a credit for wages earned, and by being condemned to work for 24 hours without pay. A condemnation to work without pay is not allowable, nor could it ever be allowed:
"... Each commission may impose penalties for violation of its rules by demotion in or suspension or discharge from position, with attendant loss of pay." (emphasis added) La. Constitution of 1974, Art. 10 § 10(A)(4).
"Neither Slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United *28 States, or any place subject to their jurisdiction." XIII Amendment, U.S. Constitution.
"Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime." La. Constitution of 1974, Art. 1 § 3.
Forcing a man to work against his will and without pay is involuntary servitude, which cannot be compelled in the absence of a conviction for criminal activity. Patrick M. Callaghan has not engaged in any criminal activity in the instant appeal. Additionally, slavery is defined as "a condition of enforced compulsory service of one to another." "Master has been defined as one who has another or others under his immediate control, a lord paramount or employer of slaves." 80 C.J.S. Slaves § 1.
We are somewhat surprised to learn that the Fire Department and the City Civil Service Commission regard involuntary servitude as still in existence in the United States. We thought the issue had been resolved some time ago.
In any case, while a penalty of suspension with a fixed duration and without pay may be assessed under certain circumstances, a man cannot be compelled to work without pay as a condition of employment.
For the reasons discussed above, we affirm the decision of the City Civil Service Commission with regard to reinstating Patrick M. Callaghan. However, we amend the reinstatement to be with back pay and overtime, if any, subject to a credit for any wages earned during the period of his suspension and dismissal. We reverse the requirement that Patrick M. Callaghan work for a period of 24 hours without pay as a condition of his employment. All costs of this appeal to be paid by appellant.
AMENDED IN PART, REVERSED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] Although the New Orleans Fire Department is modeled upon a military hierarchial structure, there is a crucial distinction to be remembered. The Fire Department is not part of the United States Military. An employee may voluntarily terminate his employment with the Fire Department at any time of his choosing and he will not be subject to imprisonment as a result of that choice. While a military officer in wartime may order men to take actions which would be unreasonable or illegal under civilian law, that grant of power is not given to the New Orleans Fire Department.