Kenneth SHRUM, et al., Plaintiffs,

v.

Edward J. UEBINGER, Defendant.

No. 81–153C(1).

United States District Court,
E.D. Missouri, E.D.

Feb. 25, 1983.

Frederick W. Drakesmith, St. Charles, Mo., for plaintiffs.

Henry D. Menghini, St. Louis, Mo., for defendant.

MEMORANDUM

WANGELIN, Chief Judge.

This matter is before the Court for a decision on the merits of plaintiffs' complaint following a three day bench trial held November 4, 8 and 9, 1982.

Plaintiffs are former employees of the St. Charles County, Missouri Sheriff's Department. Defendant, a Republican, was elected Sheriff replacing Guy L. Koester, a Democrat on January 1, 1981. Plaintiffs' claim is that they were terminated by defendant for reasons of their political affiliation in violation of their rights as secured by the First, Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Plaintiffs seek reinstatement, an order prohibiting politically motivated discharges in the future, back pay and punitive damages.

After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, this Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law equally applicable as a finding of fact is adopted as such.

*Findings of Fact*

1. Plaintiffs were employees of the St. Charles County, Missouri Sheriff's Department prior to January 1, 1980. Defendant, Edward J. Uebinger, was the successful Republican candidate for the office of Sheriff of St. Charles County in the November, 1980 general election. Defendant's opponent in that general election was Evan Thebeau, a Democrat, who had defeated the incumbent Sheriff, Guy Koester, in the Democratic primary. Defendant took office on January 1, 1981. Prior to running for Sheriff, defendant had not actively participated in partisan politics.

2. Plaintiffs are Democrats who actively supported Thebeau in the general election. This support included campaign contributions, displaying bumper stickers favorable to Thebeau's candidacy, selling tickets to Thebeau fund raisers, and posting political signs. Defendant did not solicit the support of the some one hundred employees of the Sheriff's Department prior to the general election, but accepted support from those who offered it.

3. An important position in defendant's campaign platform was his avowed commitment to bring efficiency and professionalism to the officers and administration in the Sheriff's Department. This was to be accomplished in part by the testing of skills required of all employees, a reduction in the number of officers above the rank of sergeant, and the selection of new employees by a merit system whereby an independent Sheriff's advisory board would recommend applicants (based on test scores and personal interviews) for employment. Defendant has consistently abided by the decisions of the advisory board regarding employment decisions.

4. At the time defendant became Sheriff, the department had a Chief Deputy (a Major), three or four Captains and six Lieutenants. Uebinger sought to reduce what was perceived as a top-heavy administrative structure such that only three Lieutenants (who were department heads) and one Chief Deputy (a Captain) would remain.

5. At the time defendant took office on January 1, 1980, Uebinger sought to retain only those Sheriff's Department employees who met his standards for professionalism. While defendant attempted to employ his policy of universal testing, there was insufficient time and opportunity to have each and every employee of the Sheriff's Department take the tests. The majority of the employees did take the tests. The actual testing and results were administered and analyzed by an independent body.

6. Decisions on whether to rehire past employees of the Department were made on the basis of test scores, past performance, and professional reputation. An independent testing service administered tests which included a reading test, a general law enforcement test, a psychological test and a typing test for those who were expected to

type as part of their duties. As an example, the minimum requirement for reemployment for road deputies was to read at a seventh grade level, and for typists to type ten words per minute. Bailiffs and process servers were exempt from the reading requirement. The seventh grade reading requirement was reasonable in view of the writing skills necessary to execute understandable and thorough police reports.

7. While plaintiffs claim that defendant made available copies of test materials before the actual tests to employees he desired to perform well on the tests, only a preparatory and explanatory sample test booklet was made available and was offered to all deputies on an evenhanded basis. In fact, the employees who allegedly received this material did not support defendant. None of the officers in the Sheriff's Department had an unwarranted or unfair advantage going into the testing process.

8. At the close of the reappointment process, out of one hundred (100) employees: eighty three (83) were reappointed (88.3%), eleven (11) were not, and six employees did not seek reappointment. While no single factor was determinative, each candidate was reviewed on the basis of test scores, their personnel file and past professional performance.

9. Sheriff Uebinger and his assistant officers Stroop and Hensler independently made a list of candidates which they regarded as unfit for reappointment. Each plaintiff was present on each of these lists. Additional persons present on the lists were James Heppermann, (withdrew as plaintiff on August 2, 1982), Davis Currister, Grace Keuhler and Joann Henson.

10. Plaintiff Paul Matthews failed the reading portion of the test. He had been reprimanded in the past for pulling his service revolver on a youth in response to an obscene gesture. Matthews had a history of being slow to respond to back-up calls and being overly concerned with the appearance of his patrol car. Defendant was unaware of who Matthews supported in the election.

11. Plaintiff Kenneth Clark was not reappointed since he failed both the reading and general law enforcement tests. Defendant was not aware who Clark had supported in the election.

12. Plaintiff Kenneth Shrum refused to take the law enforcement test but was aware that this test was a precondition to the reappointment process. Defendant had heard unverified reports of Shrum's support for Thebeau.

13. Plaintiff Ronald Sims was uniformly criticized by fellow workers as non-productive, continually tardy and poorly motivated as an officer.

14. Plaintiff Melvin Pearson was not reappointed by defendant since he continually placed poorly in police training programs. Defendant was unaware of who Pearson had supported in the general election.

15. Plaintiff Donald Murr failed the reading test, had a reputation for drinking on duty, had been arrested for driving while intoxicated, had been convicted for refusal to take a breathalyzer test and had resigned from another police force in connection therewith. Defendant assumed that Murr had supported Thebeau.

16. Howard Pelphrey failed the reading test. Pelphrey also failed to remove a detainee's belt when he was working as a jailer. The detainee later committed suicide by hanging and Pelphrey consequently resigned stating that he emotionally preferred a less demanding job.

17. Former plaintiff Heppermann was considered a risk to the public by those on the Sheriff's Department since he at all times carried a minimum of three firearms. He was considered by many to not have the desired psychological stability necessary for the lucid execution of his duties.

18. Only one road deputy was retained who had failed the reading test. Officer Michael Bunch had scored 6 + on the reading test (the passing grade was 7) but had scored 90 on the general law enforcement portion of the exam. Since Bunch was a Vietnam veteran, had come so close to an adequate score on the reading test and had

performed satisfactorily in the past, defendant reappointed him. Defendant was not aware of who Bunch supported in the election.

19. Defendant followed through on his promise to streamline the Sheriff's Department by reducing the number of officers in the Department. In so doing, he reduced the rank of several officers including Dean Stevens who had supported his candidacy. Raymond Wallace, a Thebeau supporter, was promoted to Lieutenant and head of the civil process unit. Defendant also hired at least two Thebeau supporters in Ruth Stroud and Robert Carmody.

20. When defendant took office only two per cent (2%) of the Department's employees had college experience, while forty per cent (40%) now are so qualified. Prior to the election defendant refused to agree with Thebeau not to fire any deputies irrespective of who won the election.

21. There is no direct proof, nor was there sufficient circumstantial evidence to convince this Court, that defendant tampered with plaintiffs' personnel files during the reappointment process.

22. Defendant never sought to learn which Department employees favored his candidacy, he never promised any deputies special favors, never guaranteed anyone employment, nor did he ever fire or threaten to fire anyone for having not supported him in the past or refusing to support him in the future.

23. The evidentiary support for plaintiffs' case is insubstantial. Plaintiffs claim that defendant tried to camouflage his politically motivated employment decisions after he returned from a seminar where he was made aware of law prohibiting the indiscriminate firing of nonpolicymaking public employees. In fact only very weak, circumstantial and self-serving testimony indicated a wrongdoing prior to defendant's attendance at that seminar, and no evidence of wrongdoing after his return. Plaintiffs also seek to make a case from the alleged inconsistency of the test results—some plaintiffs simply scored low in the reading test while doing well in other areas. This fact, without more, neither establishes the test's inaccuracy nor does it indicate a prejudicial or politically motivated use of the tests or the results. Plaintiffs also point to two persons who failed the reading test and yet were reappointed. It was defendant's policy not to require bailiffs to pass the reading portion of the test since reading and writing skills were not a substantial portion of their duties. The two individuals who had failed the reading test and were rehired were bailiffs.

24. The reason for defendant not favoring the reappointment of each and every one of the plaintiffs was the plaintiff's individual personnel records and records of past performance on the job. The advisory board's recommendations, the testing process, the test results, the personnel interviews and analysis of all personnel files was done on an evenhanded and fair basis. Political motivation was not the cause for plaintiffs' failing to receive their reappointments, they simply were not qualified for reappointment.

## Conclusions of Law

This Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1343(3).

Plaintiffs' claims are subject to the Supreme Court's holding that nonconfidential, nonpolicymaking public employees may not be discharged from positions which they are satisfactorily performing on account of nonaffiliation with or nonsupport of the political party of a newly elected sheriff, *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Although an argument could be fashioned that plaintiff's—road deputies charged with law enforcement "on the street" and working closely with the sheriff in the formulation and execution of official policy—may have been confidential or policymaking, the Court does not reach this issue. *Cf. Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). (Opinion by Stevens, J.); *Elrod* 427 U.S. at 367, 96 S.Ct. at 2686. This Court would assume that party affiliation is not an appropriate requirement for the effective per-

formance of the offices held by plaintiffs. *Branti* 445 U.S. at 510, 100 S.Ct. at 1290. Nevertheless, plaintiffs have failed to establish that their nonappointments were borne of political motivation. An analysis of both the statistical effect of defendant's over-all hiring policies, and an employee-by-employee examination of employee qualifications and work histories, fails to indicate that defendant's reappointment decisions were politically motivated.

Each of the plaintiffs has either a poor work or professional reputation, had failed portions of tests defendant had instituted or fell victim to necessary staff reductions pursuant to defendant's plan to reduce the lopsided administrative structure of the Sheriff's Department.

If the alleged First Amendment violations were not the "but for" reasons for the refusal to appoint plaintiffs, their § 1983 action fails. *Tanner v. McCall,* 625 F.2d 1183, 1195 (4th Cir.1980), *citing Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619; *Mound City Health Board of Education v. Doyle,* 429 U.S. 274, 285–7, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977).

Defendant was aware of only two or three of the plaintiffs' political affiliations. After an impartial testing procedure, independent analysis (by defendant and two assistants), thorough review of past professional performance and work history and in view of the necessary staff reductions, defendant determined that plaintiffs were undeserving of reappointment to the Sheriff's Department. No constitutionally impermissible considerations affected, let alone determined, defendant's hiring decision with respect to the plaintiffs.

Accordingly, judgment will be entered on behalf of the defendant.