878 F.2d 1578
 54 Ed. Law Rep. 1140
 Donald SEEMULLER, Plaintiff-Appellant,
v.
FAIRFAX COUNTY SCHOOL BOARD; George Stepp, Defendants-Appellees,
and
Charles Rembold; Richard Lavine; Burton S. Carnegie; John
S. Criegh; Robert Spillane; Doris Torrige, Defendants.
 No. 88-2878.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 7, 1989.
Decided July 21, 1989.
Rehearing and Rehearing In Banc Denied Aug. 21, 1989.
 
 William Bernard Reichhardt, Springfield, Va. (Reichhardt & Rydell, P.C. on brief), for plaintiff-appellant.
 Christine Hope Perdue (Thomas J. Cawley, Stephen M. Sayers, Hunton & Williams, Fairfax, Va., on brief) for defendants-appellees.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and YOUNG, Senior District Judge, United States District Court for the District of Maryland, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The sole issue in this appeal is whether a public school teacher's letter addressed a matter of public concern. Donald Seemuller, a physical education teacher at Lake Braddock High School in Fairfax County, Virginia, appeals the district court's order directing a verdict in favor of the Fairfax County School Board and George Stepp, the principal of Lake Braddock, in this Sec. 1983 action alleging violation of Seemuller's first amendment right to freedom of speech. Seemuller contends that the district court erred in ruling that his speech, a letter to the editor published in the school's newspaper, was not on a matter of public concern but was simply a personal response to criticism. Because we find that Seemuller's speech commented on a matter of public concern, we vacate the district court's order and remand for further proceedings.
 
 
 2
 * In December 1986, Lake Braddock's school newspaper, The Bear Facts, published an anonymous letter to the editor written by students and captioned "Angered Girls Fight P.E. Discrimination." The letter complained about "a few male chauvinistic P.E. teachers" and gave several supporting examples. For instance, while teaching soccer one teacher said, "I want the boys over there and the girls over here." When the girls asked why, the teacher answered: "Because boys are better than girls." On another occasion, girls who received A-'s in physical education were told: "There's always room for improvement." When a female student asked to stay out of class because of an injury, the teacher replied: "I guess that means you were actually doing something, rather than sitting around like you do at home."
 
 
 3
 Seemuller responded to the complaint by submitting a letter to the newspaper. Before publication, the paper's faculty advisor and the principal read the letter. They did not object to its publication or ask Seemuller to withdraw it. The principal did not warn Seemuller that publication would lead to disciplinary action. He did not speak to Seemuller about the letter until after it was published.[1]
 
 
 4
 The paper published the letter under the caption "P.E. Teacher Defends." The letter read as follows:
 
 
 5
 Dear Editor,
 
 
 6
 As a male physical education teacher at Lake Braddock, I was somewhat taken aback by the recent letter accusing some members of our staff of chauvinism. I cannot speak for every member of the staff, but as for myself, I like girls, and the many things they can accomplish. My two females at home are a sixteen year old whom I permit to chauffeur my son to and from his many activities, and my wife who is an adequate cook and housekeeper. My wife also does light yard work enabling me to play golf, and pursue many other masculine activities.
 
 
 7
 Hopefully this letter will convince those girls in physical education at Lake Braddock that we have the utmost respect for their feminine talents.
 
 
 8
 Sincerely,
 
 Don Seemuller
 
 9
 In addition to being distributed to students at Lake Braddock, the school's newspaper is mailed to approximately 3,600 families in the school's community. The newspaper's policy is to publish letters to the editor from students, teachers, and parents.[2]
 
 
 10
 Following publication of Seemuller's letter, the principal told Seemuller that he had received complaints from the community, faculty members, and the Lake Braddock Human Relations Committee. He also said that Seemuller might receive a "needs improvement" rating in "Professional Responsibility" in his final evaluation in April and suggested that Seemuller meet with the Human Relations Committee and write a letter of apology to the newspaper.
 
 
 11
 Seemuller met with the committee and submitted a letter of apology to the newspaper in May 1987 which appeared under the heading, "Seemuller Apologizes for Satirical Response." He wrote:
 
 
 12
 Dear Editor,
 
 
 13
 A while ago, I wrote a letter to The Bear Facts concerning male chauvinism in the physical education department. Although the intent of the letter was satirical in nature, some people in the Lake Braddock Community have apparently perceived it to be an accurate assessment of my underlying feelings toward women. This perception of me cannot be further from the truth. Although I was speaking only for myself, I feel the integrity of the Lake Braddock Physical Education Staff has been unfairly compromised. I apologize to those members of the community who were offended by my letter. I also apologize to my colleagues throughout the building if they feel my comments made their job of dealing with students and me more difficult.
 
 
 14
 I feel my letter may have brought undue criticism upon my friends in my department. I would hope they understand the intent in which it was written. Any perception of sexual discrimination at Lake Braddock, I hope is unjustified. I can honestly say I have not witnessed any such discrimination in our department. I hope those students who have such feelings will feel inclined to discuss these feelings with individual teachers. Communication is a gift teachers must not abuse. I apologize to the Lake Braddock community for my apparent miscommunication.
 
 
 15
 Sincerely,
 
 Don Seemuller
 
 16
 The paper appended the following statement to Seemuller's letter:
 
 EDITOR'S NOTE
 
 17
 The editorial board respects Mr. Seemuller for discussing and confronting the sexual bias problem that some students see in the physical education department. However, this letter should have been unnecessary. Mr. Seemuller's original statement was facetious and not meant to be offensive.
 
 
 18
 Letters to The Bear Facts are greatly appreciated by the Editorial Board, and should be respected by all members of the Lake Braddock community. Hopefully the harassment of one teacher will not scare others from contributing.
 
 
 19
 In his final evaluation in April 1987, as a result of the publication of his letter, Seemuller was rated as "Needs Improvement" in "Professional Responsibility." Seemuller alleges that because of this evaluation he did not receive his step increment in pay for the 1987-88 school year.
 
 
 20
 Seemuller filed a grievance in accordance with school board regulations and state law. The deputy superintendent of schools who was designated by the superintendent to consider Seemuller's grievance acknowledged that his letter "was published in the context of school and community concerns about the treatment of females in school programs." The deputy superintendent concluded that Seemuller was able to exercise his "freedom of speech because [his] letter was published."[3] Without further explanation, the school board denied the grievance after reviewing the documents and recommendation of the superintendent. Seemuller then brought this action.
 
 II
 
 21
 The Supreme Court has explained in a series of cases during the last two decades the principles governing our inquiry. The initial question in deciding a public employee's entitlement to the protection of the first amendment is whether his speech addresses a matter of public concern. See Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987). In the absence of unusual circumstances, a public employee's speech "upon matters only of personal interest" is not afforded constitutional protection. Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). In contrast, a government employee's speech is protected from disciplinary action by his employer if "the interests of the [employee], as a citizen, in commenting upon matters of public concern" outweigh "the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). In this case, because the district court found that Seemuller's letter did not comment on a matter of public concern, it did not reach the Pickering balancing test. Consequently, the only issue on appeal is whether Seemuller's letter may be "fairly characterized as constituting speech on a matter of public concern." Connick, 461 U.S. at 146, 103 S.Ct. at 1689.
 
 
 22
 Connick also explains that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147-48, 103 S.Ct. at 1690-91. In conducting this examination, an appellate court is obligated to make "an independent constitutional judgment on the facts of the case." Connick, 461 U.S. at 150 n. 10, 103 S.Ct. at 1692 n. 10. The Court has reiterated that the "ultimate issue--whether the speech is protected--is a question of law." Rankin, 107 S.Ct. at 2897 n. 9; Connick, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7.
 
 
 23
 Connick dealt with the complaint of an employee who was discharged after she circulated a questionnaire that primarily sought responses about employment conditions in the office where she worked. In ruling that the employee's questionnaire did not involve a matter of public concern, the Court said:
 
 
 24
 When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.
 
 
 28
 Connick, 461 U.S. at 146-47, 103 S.Ct. at 1689-90 (citation omitted).
 
 
 29
 In contrast to Connick, the Court has held that a teacher's complaint about racial discrimination was protected by the first amendment. Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). Commenting on Givhan, the Court has observed that a protest of racial discrimination is "a matter inherently of public concern." Connick, 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8.
 
 III
 
 30
 In applying the foregoing principles to the facts of this case, the starting point is the anonymous letters written by students about the physical education department. The paper's editor recognized its content by captioning it "Angered Girls Fight P.E. Discrimination." The letter protested that teachers practice discrimination based on sex. The letter addressed an issue that is no less a matter of public interest than a charge that a school system engages in discrimination based on race. Cf. Givhan, 439 U.S. 410, 99 S.Ct. at 694; Connick, 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8.[4]
 
 
 31
 Seemuller's letter, submitted for publication several weeks later, was a response to the anonymous letter. It starts out by stating that "I was somewhat taken aback by the recent letter accusing some members of our staff of chauvinism." The editor recognized Seemuller's letter as a defense of the department, for it was published with the caption: "P.E. Teacher Defends." Seemuller's letter was intended to address and did address the complaint of discrimination based on sex--a matter of public concern. This is apparent from the letter itself and from Seemuller's testimony at trial: "I was poking fun or making light or telling them to lighten up a little bit, that maybe what they had heard wasn't what really was going on."[5] Asked to describe the letter, he testified: "My letter is, it is a humorous attempt at satire to point out that misperceptions can occur."[6]
 
 
 32
 In his letter of apology, Seemuller explicitly stated that in his first letter he addressed "male chauvinism in the physical education department" and that the "intent of the letter was satirical in nature." The editor understood that Seemuller's first letter was a "Satirical Response" to the anonymous letter protesting discrimination based on sex. The editor appended a note saying the letter of apology was unnecessary and expressing the hope that Seemuller's treatment will not "scare others from contributing." The editor was aware of the danger of chilling speech protected by the first amendment.
 
 
 33
 The deputy superintendent of schools who presided over the grievance hearing recognized that Seemuller's letter dealt with a matter of public concern. In her decision she found as a fact that Seemuller's "letter was published in the context of school and community concern about the treatment of females in school programs." The grievance decision acknowledges that Seemuller was exercising his freedom of speech.[7]
 
 
 34
 The record discloses that even before the anonymous letter was published in December 1986 some girls had complained that they were treated as second class citizens in the school. The exchange of correspondence between the anonymous letter writer and Seemuller sparked much livelier discussion about discrimination based on sex. The day after Seemuller's letter was published the principal met with 32 girls regarding discrimination and assured them he would not tolerate it. Later the school human relations committee met, deplored discrimination based on sex, and urged the principal to take steps to prevent it. Some people, taking Seemuller's letter literally, were offended by it and criticized it as demeaning women. Nevertheless, the fact that some persons considered the letter to be inappropriate or controversial "is irrelevant to the question whether it deals with a matter of public concern." Rankin, 107 S.Ct. at 2898. "[T]he public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." Hustler Magazine v. Falwell, 485 U.S. 46, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988), quoting Street v. New York, 394 U.S. 576, 592, 89 S.Ct. 1354, 1365, 22 L.Ed.2d 572 (1969).
 
 
 35
 Seemuller's use of satire to comment on a matter of public concern did not deprive him of the protection afforded by the first amendment. From Greek and Roman antiquity until the present time, commentators on public affairs have colored their writing with satire--sometimes humorous, sometimes gentle, sometimes caustic. See E. & L. Bloom, Satire's Persuasive Voice (1979); C. Schutz, Political Humor: From Aristophanes to Sam Ervin (1977). One of America's noted satirists has given his name to the art.[8] A teacher's letter criticizing the board of education was spiced with satire, but he was not deprived of the first amendment's protection. See Pickering v. Board of Education, 391 U.S. at 574-78, 88 S.Ct. at 1737-40 (by implication). Writing in a different context, the Supreme Court has observed that the first amendment protects satirists. Hustler, 108 S.Ct. at 880; see also Falwell v. Flynt, 805 F.2d 484, 487 (4th Cir.1986) (Wilkinson, J., dissenting from the denial of rehearing en banc).
 
 
 36
 In sum, we conclude that a complaint published in a school newspaper that a public school discriminates on the basis of sex raises a question of public concern. Seemuller's published response to the complaint also commented on a matter of public concern.
 
 
 37
 The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion. Seemuller shall recover his costs.
 
 
 
 [1]
 The faculty advisor testified that the principal would have no basis for censorship "under the traditional three areas that one could censor, obscenity, libel, or disruption of the day." He added that as faculty advisor he constantly censored articles that were "inappropriate." Obviously, he did not censor Seemuller's letter. Appendix 149-50
 
 
 [2]
 In a context quite different from that presented by this case, the Supreme Court held that educators may exercise editorial control over the contents of a school newspaper produced as part of the school's journalism curriculum, because the paper was not a public forum. Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). The facts and the issues in the present case differ from those in Hazelwood, and the school officials neither rely on Hazelwood nor otherwise contend that the school paper, The Bear Facts, was not a public forum insofar as the controversy that is the subject of this appeal is concerned
 
 
 [3]
 The pertinent parts of the decision on Seemuller's grievance are as follows:
 The first part of your grievance contends that your evaluation is in fact a disciplinary measure because you exercised your freedom of speech. The speech in question is a letter you wrote to a student newspaper regarding women and the talents associated with them. This letter was published in the context of school and community concern about the treatment of females in school programs.
 Our discussion convinced me that you were able to exercise your freedom of speech because your letter was published, but this exercise did not exhibit mature judgment or an understanding of interpersonal and human relationships with your colleagues, students, or the community as specifically required under the guidelines for evaluation. In fact, the reactions to your letter from students and the Human Relations Committee reflect the turmoil aggravated by your letter. There is a factual basis for your rating, the judgment of the principal has been unbiased, and there is no prohibition of exercise of free speech at any time.
 Appendix 280.
 
 
 [4]
 Of course, not every statement about discrimination based on sex involves a matter of public interest. As the Court cautioned in Connick, 461 U.S. 147-48, 103 S.Ct. at 1690-91, context of the statement must be considered. Thus, a statement about discrimination based on sex made in connection with an investigation of a school guard for lying about the ownership of marijuana did not involve a matter of public concern because the guard spoke simply to advance his own interest. See Arvinger v. Mayor of Baltimore, 862 F.2d 75 (4th Cir.1988)
 
 
 [5]
 Appendix 77
 
 
 [6]
 Appendix 64
 
 
 [7]
 The deputy superintendent, and presumably the school board, denied the grievance because of the manner in which Seemuller exercised his freedom of speech. The grievance decision did not find that Seemuller's comments addressed only a personal concern. See supra n. 2
 
 
 [8]
 "menckenese: n. [H.L. Mencken ... Amer. journalist and satirist & E-ese]: the peculiarly vigorous racy flamboyant and often caustic style characteristic of the journalist Mencken or a style patterned on or resembling that of Mencken (difficult to read through a daily newspaper without finding a feature writer who employs Menckenese--George Mayberry)." Webster's Third New International Dictionary 1409