180 N.J. Super. 155 (1981)
434 A.2d 609
IN THE MATTER OF EAST ORANGE PUBLIC LIBRARY, RESPONDENT-APPELLANT, AND CONSTANCE TALIAFERRO, CHARGING PARTY-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1981.
Decided July 14, 1981.
Before Judges SEIDMAN, ANTELL and LANE.
*156 Ellen Harrison argued the cause for appellant (Jacob Green, attorney; Ellen Harrison on the brief).
Oscar J. Miller argued the cause for respondent Constance Taliaferro.
Sidney H. Lehmann, General Counsel argued the cause for respondent Public Employment Relations Commission (James F. Schwerin, Deputy General Counsel, on the brief).
PER CURIAM.
Appellant East Orange Public Library (Library) appeals from a determination of the Public Employment Relations Commission (PERC) that it had violated N.J.S.A. 34:13A-5.4(a)(1) in terminating the employment of respondent Constance Taliaferro. It also appeals from the order issued by PERC which, among other things, directed the Library to cease and desist from interfering with the statutory rights of its employees, "particularly, by terminating employees, such as Constance Taliaferro, for the exercise of such rights as filing grievances," and to offer Taliaferro reinstatement with back pay.
The PERC decision and order emanates from an unfair practice charge filed by Taliaferro under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. She alleged that the Library's termination of her employment was a violation of N.J.S.A. 34:13A-5.4(a)(1) through (7), in that it was motivated in part by her filing and processing a grievance and by her involvement in union activities. At the hearing Taliaferro contended that these constituted the sole reasons for her discharge. The Library maintained that its only reason for terminating the employment was work-connected, in that Taliaferro was unable satisfactorily and efficiently to perform her duties. In the course of the hearing the alleged violations were narrowed to subparagraphs (1) and (3) of N.J.S.A. 34:13A-5.4(a): interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act, and discriminating in regard to hire or tenure of employment to encourage or *157 discourage employees in the exercise of the rights guaranteed to them by the statute.
The hearing examiner found that the charging party had failed to meet her burden of proving that the Library had manifested anti-union animus toward her either during the course of her employment or in terminating the employment. He accordingly concluded that the Library had not violated subsection (a)(3) and recommended a dismissal of the charge to that extent. The hearing officer found, however, that the Library "independently violated subsection (a)(1) of the Act under the standard of New Jersey College of Medicine and Dentistry" in that Taliaferro's discharge "was triggered by and causally connected to her initial effort to present a grievance to the Board of Trustees on November 30, 1978." Following the Library's filing of exceptions to the hearing examiner's recommended report and decision, PERC substantially accepted the findings and conclusions contained therein and issued the decision and order which is the subject matter of this appeal.
The charging party was employed by the Library as its library exhibit artist and public information assistant. The position was in the classified civil service, but the employee's status was provisional pending examination and certification. She received the lowest grade of the four candidates who took the Civil Service examination in July 1979 after the termination of her employment. The library director, Dorothy S. Jones, was Taliaferro's immediate supervisor. At first they got along well but by October 1978 the relationship cooled. Ms. Jones criticized her subordinate's work and put her complaints in writing. Deeming the complaints to be unfounded, Taliaferro decided to submit a grievance and requested that it be placed on the agenda for the next meeting of the board of trustees later that month. Taliaferro appeared at the meeting but the board refused to hear her when Jones advised the board that Taliaferro had not submitted a written grievance to her. Jones later reprimanded Taliaferro for attempting to present her grievance without permission and, after learning that Taliaferro had commandeered all the library *158 employees to help make the Christmas display, decided to terminate her employment and did so on December 18 to be effective January 12.
At the board's meeting on December 28 the termination was not accepted. Instead, Jones was directed to change her notice of termination to a recommendation of termination. Taliaferro was permitted to present her grievance to the board and to respond to each of Jones' complaints regarding her work performance. The board decided not to terminate Taliaferro's employment. A personnel committee was formed consisting of the board chairman and two members. The committee thereafter met with Jones and Taliaferro individually and jointly. The problem appeared to the committee to be a personality conflict. Subsequently, the board notified Taliaferro to return to her job on January 16, 1979 and to work toward a reconciliation "of work-oriented objectives" with Jones "for the good and welfare" of the library system. She was informed that her work would be monitored and evaluated by the committee for a period of three months, after which a recommendation would be made to the board. Taliaferro was removed from the direct supervision of Jones and assigned to the assistant director. Taliaferro was closely watched and, after six weeks, the committee determined that she was not properly performing her duties and recommended her discharge. The board accepted the recommendation and terminated the employment April 14, 1979.
In concluding that the Library's discharge of Taliaferro violated subsection (a)(1) the hearing examiner took note of a public employee's constitutional right to present a grievance to a public employer. N.J.Const. (1947), Art. I, par. 19. He also held that the presentation of a grievance was a protected activity under subsection (a)(1) of N.J.S.A. 34:13A-5.4. The hearing examiner found that the Library, "through the action of Jones," violated that subsection by interfering with and restraining Taliaferro in the exercise of her right to present a grievance. He then *159 proceeded to consider whether Taliaferro's subsequent problems with Jones and the board "are causally connected to Taliaferro's final termination." He found a sufficient causal connection between Taliaferro's attempt to present a grievance and her subsequent termination.
As PERC points out in its decision and order, the hearing examiner arrived at this conclusion despite evidence that (1) the board had reinstated Taliaferro after Jones had initially terminated her, (2) the board provided Taliaferro with an opportunity to present her grievance at its December 1978 meeting and (3) a personnel committee was established for the specific purpose of monitoring Taliaferro's work so that the board could make an independent assessment of her job performance. It is further noted in its decision that despite these actions taken by the board the hearing examiner concluded that the decision to terminate violated the act in that (1) Jones had input into the personnel committee's deliberations, (2) a trustee member of the committee had moved at the December meeting to terminate Taliaferro, (3) Jones warned Taliaferro early in February 1979 not to participate in union activities and (4) the board denied Taliaferro her accumulated vacation leave for disciplinary purposes.
In its independent survey of the record PERC said that "[w]hile we do not pass judgment upon the accuracy of Jones' assessment of Taliaferro's work performance, we are nonetheless satisfied that Jones' animus toward Taliaferro for the latter's exercise of protected rights unduly influenced Jones' decision to dismiss Taliaferro." PERC was of the view that Jones conduct "tainted" the ultimate decision of the board because of her "direct and indirect" input into the committee's deliberations. PERC said that the committee's recommendation to terminate was further "tainted" by one of its member's having moved at the December board meeting to dismiss Taliaferro.
*160 In reaching its conclusion that the Library had been guilty of an unfair practice in discharging Taliaferro, PERC applied the so-called "one of the motivating factors" test and summarily rejected the Library's assertion that its decision to terminate Taliaferro was based upon valid, independent and unrelated grounds. No findings of fact were made either by the hearing examiner or PERC on the quality of Taliaferro's work performance as reflected in the unfavorable committee evaluation and recommendation that she be discharged. The standard employed by PERC was that a finding of violation required only a showing that the discharge was based in part on an unlawful motive. While we have difficulty in discerning in the record a substantial nexus between the claimed interference with Taliaferro's attempt to present a grievance and her ultimate discharge, we need not pursue the matter further. We are satisfied from our review of the record that there are serious deficiencies in the agency's factfinding process. As indicated earlier, the hearing examiner's conclusion was that Taliaferro's discharge "was triggered by and causally related to her initial effort to present a grievance to the Board of Trustees." PERC brushed aside the Library's effort to establish that its decision to terminate Taliaferro was based upon valid grounds.
It is to be noted that subparagraph 5.4(a)(1) is substantially patterned after § 158(a)(1) of the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq. The federal courts have not been uniform in their concept of the test to be applied in determining violations of that subparagraph or of § 158 (a)(3), which is comparable to subparagraph 5.4(a)(3) of our statute. The differences are set forth in the NLRB decision in Wright Lines, Inc., 251 NLRB No. 150, 105 LRRM 1169 (1980). There is the "in part" test, which is that if a discharge is motivated in part by the protected activity of the employee, the discharge violates the federal statute even if a legitimate business reason was also relied upon. See, e.g., Pelton Casteel, Inc. v. NLRB, 627 F.2d 23, 27 (7 Cir.1980). Another standard used by some courts in *161 the case of multiple motives for a discharge has been that the discriminatory motive must be the moving or dominant cause of the discharge. Western Exterminator Co. v. NLRB, 565 F.2d 1114, 1118 (9 Cir.1977). Still another has been the "but-for" approach; that is, a violation exists if the employee would not have been terminated "but for" his engaging in a protected activity. See Polynesian Cultural Ctr., Inc. v. NLRB, 582 F.2d 467, 473 (9 Cir.1978). Finally, it has been said that if the employee would have been fired irrespective of the protected activity, the "real" reason for the discharge is not a reaction to the exercise of the activity. Edgewood Nursing Center, Inc. v. NLRB, 581 F.2d 363 (3 Cir.1978).
The recent decision of the United States Supreme Court in Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), although in the context of the failure to rehire a schoolteacher allegedly because of her exercise of First Amendment rights, points the way to a satisfactory uniform approach to comparable cases. The court was critical of a rule of causation, applied by the district court, which focused solely on whether protected conduct played a part, substantial or otherwise, in a decision not to rehire, since this could place the employee in a better position as the result of the exercise of constitutionally protected conduct than had he done nothing. 429 U.S. at 285, 97 S.Ct. at 575, 50 L.Ed.2d at 482. The court expressed the view that the candidate "ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision." 429 U.S. at 286, 97 S.Ct. at 575, 50 L.Ed.2d at 483. The fact that the protected conduct played a substantial part in the actual decision not to renew would not necessarily amount to a constitutional violation justifying remedial action. Rather, the burden was initially placed upon the candidate

*162 ... to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"  or, to put it in other words, that it was a "motivating factor" in the board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct. [429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed. at 484]
See, also, Arlington Heights v. Metro Housing Corp., 429 U.S. 252, 271, 97 S.Ct. 555, 566, 50 L.Ed.2d 450, 468 (1977); cf. Givhan v. Western Line Consolid. Sch. Dist., 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).
Mt. Healthy was applied to an NLRB case in Coletti's Furniture, Inc. v. NLRB, 550 F.2d 1292 (1 Cir.1977). The Coletti court construed Mt. Healthy to mean that "an improper consideration is not `substantial' if the discharge would have occurred in any event." It held that "[w]here there are both proper and allegedly improper grounds for discharge, its [NLRB] burden is to find affirmatively that the discharge would not have occurred but for the improper reason." 550 F.2d at 1293-1294. See, also, NLRB v. Eastern Smelting & Refining Corp., 598 F.2d 666, 671 (1 Cir.1979). In Gould, Inc. v. NLRB, 612 F.2d 728, 734 (3 Cir.1979), cert. den. 449 U.S. 890, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980), the court said that the agency determination than an employee's discharge was "affected or motivated in part" because he had filed charges against his employer with federal agencies, including the NLRB, "falls short of holding that [the employee] was discharged `because of' these protected activities."
... To put it another way, if it has been found that the employee would have been disciplined for proper cause notwithstanding the employer's attitude toward the union, the discipline must be held to be non-discriminatory, because in that case the causal relationship between the anti-union bias and the discipline would be insufficient to support a conclusion that the discipline was administered "because of" the protected activity and that the proferred proper reason was a pretext, it being elementary logic that the discipline could not be "because of" anti-union bias if the discipline would have resulted notwithstanding the absence of such bias. [Ibid.]
*163 The Mt. Healthy test of shifting burdens has now been adopted by the National Labor Relations Board. Wright Line, Inc., supra. The NLRB explication is this:
Under the Mt. Healthy test, the aggrieved employee is afforded protection since he or she is only required initially to show that protected activities played a role in the employer's decision. Also, the employer is provided with a formal framework within which to establish its asserted legitimate justification. In this context, it is the employer which has "to make the proof." Under this analysis, should the employer be able to demonstrate that the discipline or other action would have occurred absent protected activities, the employee cannot justly complain if the employer's action is upheld. Similarly, if the employer cannot make the necessary showing, it should not be heard to object to the employee's being made whole because its action will have been found to have been motivated by an unlawful consideration.... [105 LRRM at 1174]
We are persuaded that the Mt. Healthy approach is sound, balanced and fair to both sides. It prevents, as was the case here, undue emphasis upon the "in part" test and the failure to analyze thoroughly and completely the case presented by the employer. Accordingly, we reverse the decision and order of PERC and remand the matter for a new hearing, followed by appropriate findings of fact and conclusions.
On the remand it shall be the responsibility of Taliaferro to establish that her protected activity, the presentation of a grievance, was a substantial, i.e., a motivating factor in the board's decision to terminate. It is not enough that the activity may have "triggered" and was "causally connected" to the termination of the employment. If it appears from the employee's evidence that the presentation of the grievance was a substantial factor in the subsequent discharge, then the board must go forward and establish by a preponderance of the evidence that the termination occurred because of Taliaferro's work performance and not in retaliation for her having presented a grievance. The conflicting proofs will be for the factfinder to resolve. The findings of fact and conclusions, together with the ultimate decision and order by PERC, must be within the framework of the test enunciated above.
Reversed and remanded for further proceedings consistent with the foregoing. Jurisdiction is not retained.