**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1151-23

IN THE MATTERS OF
WATCHUNG HILLS REGIONAL
HIGH SCHOOL DISTRICT
BOARD OF EDUCATION,

      Charging Party/Cross
      Respondent-Appellant,

and

WATCHUNG HILLS REGIONAL
EDUCATION ASSOCIATION,

      Respondent/Cross-Charging
      Party-Respondent.

_____

NEW JERSEY PUBLIC
EMPLOYMENT RELATIONS
COMMISSION,

      Respondent.

_____

Argued December 2, 2024 – Decided December 20, 2024

Before Judges Sabatino, Berdote Byrne, and Jacobs.

On appeal from the New Jersey Public Employment Relations Commission, PERC Nos. CE-2022-005 and CO-2022-168.

Joseph L. Roselle argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; Joseph L. Roselle, of counsel and on the briefs; Christopher J. Sedefian, on the briefs).

Samuel Wenocur argued the cause for respondent Watchung Hills Regional Education Association (Oxfeld Cohen, PC, attorneys; Samuel Wenocur, of counsel and on the brief).

John A. Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; John A. Boppert, on the brief).

PER CURIAM

This appeal concerns whether reasonable limitations may be placed upon the number of public employee union members who may attend and participate in contract negotiations with a public employer.

The Watchung Hills Regional High School District Board of Education ("the Board") appeals from an October 26, 2023 final agency decision of the Public Employment Relations Commission ("PERC"), finding the Board violated the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -64, ("EERA" or "the Act") when it declined to negotiate with the "Bargaining

Council" of the Watchung Hills Regional Education Association ("the Union"), the majority representative of its employees.

As structured by the Union, the Bargaining Council is comprised not only of negotiators at the bargaining table with the Board's representatives, but also the entire rank-and-file membership of the Union. That rank-and-file membership in this case consists of over two hundred employees.

After the Union insisted on negotiating with the Board in the presence of up to all of the members of its Bargaining Council, the Board filed with PERC an unfair labor practice charge against the Union. The Board argued the Union violated N.J.S.A. 34:13A-5.4(b)(1), (3), and (5) by refusing to negotiate without the full Bargaining Council present and rebuffing the Board's proposed "ground rule" for the parties to collectively bargain with only their negotiators present.

The Union filed a cross-charge alleging the Board engaged in an unfair labor practice and violated N.J.S.A. 34:13A-5.4(a)(1) and (5) when it refused to bargain with the Union's full Bargaining Council and, in doing so, violated its employees' right to choose who will represent them at negotiations.

After considering the issues based on stipulated facts presented by the parties, PERC found the Board violated N.J.S.A. 34:13A-5.4(a)(1) and (5) by being unwilling to negotiate with the Union's entire Bargaining Council. PERC

3

concluded that unwillingness constituted an unfair labor practice. Reciprocally, PERC dismissed the Board's unfair labor practice charges against the Union.

In its final agency decision, PERC ordered the Board to engage in good faith negotiations with the Union in the presence of its Bargaining Council. However, PERC explicitly recognized in its decision the "possibility that such large numbers of people in a negotiation session could become problematic . . . ." Such problems could arise "both as a practical matter (in terms of accommodations as well as safety and security), and in the event the [Union's bargaining] group becomes disruptive, otherwise demonstrates ill will or fails to observe confidentiality ground rules." Although it noted such problems had not yet sufficiently materialized, PERC "caution[ed] . . . [the Union] [to] continue to remain open to reasonable restrictions on the deployment of its Bargaining Council in negotiations, as well as to ground rules that will reasonably maintain effective negotiations when large negotiations teams are present."

The present appeal by the Board followed. The Board contests both PERC's rejection of an unfair practice committed by the Union and its finding of an unfair practice on the part of the Board. In the meantime, as we were advised at oral argument, the negotiations proceeded, and an agreement was achieved in the underlying matter.

A-1151-23

For the reasons that follow, we affirm PERC's decision in part and vacate it in part. We conclude that neither the Union nor the Board engaged in an unfair labor practice in the circumstances presented. The question of whether reasonable restrictions or ground rules may be placed on the number of Union bargaining representatives who may participate in a contract negotiation is not the subject of any PERC regulation, nor has it been a holding of any published judicial opinion. The Board did not act in bad faith in bringing this unsettled legal issue to the attention of PERC, just as the Union likewise did not act in bad faith by cross-moving for such a PERC determination. The legitimacy of the Board's concerns about the numerosity of Union members at the negotiating table were, in fact, acknowledged in PERC's decision. Given the uncertainty and novelty of the issue, the unfair labor practice determination against the Board should, in all fairness, be vacated and the denial of the charge against the Union affirmed. The order directing the Board to negotiate with the Bargaining Council is now moot. Malanga v. Twp. of W. Orange, 253 N.J. 291, 307 (2023) (reaffirming the doctrine of mootness pertains where the ruling sought will have "no practical effect on [an] existing controversy").

That said, we agree with PERC's admonishments in its decision to encourage parties to agree to reasonable ground rules or restrictions on the

number of participants in the negotiations process. We specifically urge PERC, going forward, to engage in an administrative rulemaking process, with notice and comment from interested parties, and promulgate regulations that address such situations. As part of its consideration of such proposed regulations, we respectfully suggest that PERC identify methods for the possible selective "livestreaming" of negotiations that would promote transparency and enable all members of the Union to observe the bargaining process remotely, subject to confidentiality limitations.

## I.

The following facts were jointly stipulated to by the Board and the Union. We mention only those that are most germane to our discussion.

The Board is a public employer, "within the meaning of the [EERA]" and operates Watchung Hills Regional High School. The high school serves as the public high school for Greenbrook, Long Hill, Warren, and Watchung residents. The Union serves as the representative for the Board's professional staff. At the time of the collective bargaining negotiations relevant to the matter before this court, the Union represented "approximately 225 Board employees, including but not limited to teachers, secretaries, paraprofessionals, bus drivers, nurses,

6

security personnel, child study team members, counselors, and buildings, grounds and maintenance staff."

The Board and the Union had a collective negotiations agreement ("CNA"), which covered the contract period of July 1, 2019, to June 30, 2022. When the Board and the Union negotiated for the 2019 to 2022 CNA, the Union first implemented and started using a "Bargaining Council." The Union's negotiations committee became "comprised of two parts: the [full] Bargaining Council and the individuals at the bargaining table directly across the Board at bargaining sessions ('Negotiators')." Although the Union's Bargaining Council "was comprised of, and open to, all [Union] members," it was closed to non-Union members.

When negotiating with the Board over the 2019 to 2022 contract, the Union wanted to have up to all Bargaining Council members present at negotiations. The parties stipulated to there being "at least one occasion during the negotiations for the 2019 [to] 2022 CNA the Bargaining Council attended the bargaining session."[1]

---

[1] The record does not reveal an exact or stipulated number of the Bargaining Council members who had been present for this negotiation session. In its decision, PERC relied upon a news article submitted by the parties in their joint exhibit, which reported that over fifty Union Bargaining Council members were

After the Bargaining Council was present for one of the negotiation meetings, the Board and the Union "agreed to meet in a smaller setting in an effort to expeditiously reach a successor agreement." The Board and the Union also agreed to negotiate only salary and health benefits during the "smaller setting" meeting and exclude legal representatives from both parties.

In the fall of 2019, the Board and the Union came to an agreement and executed the 2019 to 2022 CNA. No unfair labor practices were filed by either party during the period of the 2019 to 2022 negotiations.

Thereafter, in October 2021, the Board and the Union began discussions to start the negotiations process for a successor CNA for the next contract period. Between the ratification of the 2019 to 2022 CNA in the fall 2019 and the start of successor agreement negotiations in October 2021, the Board and the Union did not discuss "the scope of the Bargaining Council's involvement in the negotiations for the successor CNA." The parties tentatively scheduled the first negotiation session to discuss the successor agreement for November 10, 2021.

present. This article is included in the record before this court. We have considered remanding the appeal to have PERC settle the record on the number of members who had been present at that past session, but forego such a remand in the interests of expediency.

In October 2021, the Union's negotiations chair informed the Board's negotiations chair of the Union's plan to have the negotiations sessions available to all Bargaining Council members who wished to attend. The Board negotiations chair objected to having to negotiate with a group of that size.

The disagreement persisted. On November 9, 2021, the Board negotiations chair communicated to the Union negotiations chair the Board's intention to propose a ground rule that would prohibit "the Bargaining Council from being present at and participating in the negotiations sessions for the successor agreement." The parties could not agree on whether the Bargaining Council could be present for negotiations. Due to that ongoing disagreement, the parties postponed the November 10, 2021 negotiation session to provide more time for the parties to come to an agreement regarding the Bargaining Council's presence at negotiations sessions.

On December 8, 2021, the Union and the Board agreed to have designated representatives of both parties meet to "discuss ground rules, including the role of the Bargaining Council during negotiations sessions." For this limited event, the Union agreed to not have the Bargaining Council present for the December 8, 2021 meeting only.

A-1151-23

During the December 8, 2021 meeting, the Board "maintained its position that the [Union's] Bargaining Council should not be allowed to attend the negotiations sessions." The Union disagreed, and contended "it had the right to include its Bargaining Council members at negotiations sessions." At the December 8, 2021 meeting, the Board and the Union "exchanged numerous proposals regarding the Bargaining Council or alternatives, but were unable to agree to any solution at this meeting." Meanwhile, as to the substance of the negotiations, the parties concluded the meeting with an agreement to exchange successor contract proposals by the end of January 2022.

In January 2022, the Board filed with PERC an unfair labor practice charge against the Union. In turn, the Union filed a cross-unfair labor practice charge against the Board in February 2022.

On June 15, 2023, the Board and the Union filed with PERC a joint stipulation of facts. The parties also agreed to submit the consolidated matters to the full PERC for a final agency decision and waive "a hearing examiner's report and recommended decision."

On October 26, 2023, PERC issued a final agency decision and order. In that ruling, PERC concluded the Board had violated N.J.S.A. 34:13A-5.4(a)(1)

and (5). PERC conversely dismissed the Board's unfair practice charge against the Union.

In its ruling PERC explained "our decision today is not intended to endorse or discourage 'open' collective negotiations, as defined by [the Union] . . . . [W]e find that its practice, when carried out in accordance with good faith and within the boundaries of the Act, is not inherently an unfair practice." PERC found the "record contains no persuasive evidence substantially implicating conflict of interest, ill-will, or safety and security concerns in connection with the [Union's] designation of the Bargaining Council as part of its negotiations team" and "no evidence suggesting Bargaining Council members are mere passive observers of the negotiations process, as opposed to active participants in it."

PERC accordingly ordered the Board to refrain from refusing to negotiate with the Union in good faith in the presence of its Bargaining Council over "mandatorily negotiable subjects, including over negotiations ground rules respecting the presence of the [Union's] Bargaining Council during negotiations sessions."

Nevertheless, PERC included several caveats within its decision, which we quote here at length:

We do not underestimate the possibility that such large numbers of people in a negotiation session could become problematic, both as a practical matter (in terms of accommodations as well as safety and security), and in the event the group becomes disruptive, otherwise demonstrates ill will or fails to observe confidentiality ground rules. But we find that those issues have not yet materialized in a manner that would support a good faith refusal to negotiate on the part of the Board, based on the stipulated record before us. Our decision today is limited to that record.

Significantly, we note the [Union's] demonstrated willingness (in the last round of negotiations) to negotiate without the presence of its Bargaining Council if necessary, and its certified willingness to set ground rules pertaining to the maximum size of the Bargaining Council and the number of sessions it may attend in current negotiations. We caution that the [Union] should continue to remain open to reasonable restrictions on the deployment of its Bargaining Council in negotiations, as well as to ground rules that will reasonably maintain effective negotiations when large negotiations teams are present.

Our decision also does not preclude the Board, going forward, from asserting any good faith challenges during the parties' negotiations if actual evidence arises of conflict of interest or ill-will, breach of confidentiality, or concerns over safety and security in connection with the [Union's] use of its Bargaining Council.

[(Emphases added).]

12

This appeal by the Board followed. We were advised for the first time at oral argument that the parties have successfully negotiated a CNA for the contract period. As such, PERC's mandatory injunction against the Board is now moot. We therefore limit our discussion, retrospectively, to the unfair practice determinations.

II.

The issues presented here involve both questions of statutory interpretation and operational subject matters within the expertise of PERC. We review the statutory issues, de novo, as questions of law. In re Cnty of Atl., 445 N.J. Super. 1, 11 (App. Div. 2016), aff'd on other grounds sub nom. Matter of Cnty. of Atl., 230 N.J. 237 (2017). We review the operational questions with deference to the agency, assessing whether its decision is arbitrary, capricious, or unreasonable. City of Jersey City v. Jersey City Police Officers Benev. Ass'n, 154 N.J. 555, 566–67 (1998).

The specific legal question of whether a public employee Union may designate a large "Bargaining Council" (consisting here of over two hundred employees) to participate in contract negotiations with an employer's negotiating team is not squarely addressed in the pertinent statutes, nor for that matter, in any existing PERC regulations.

To be sure, as PERC acknowledged, there is a general and important legal right of a Union to choose what the statutes term its "representatives." N.J.S.A. 34:13A-5.3 (providing that "representatives" are designated or selected by a majority of public employees for the purposes of collective negotiations). The employer cannot pick and choose which subset of Union members it will negotiate with at contract bargaining sessions. The Board has not asserted a right to make such a selection. Instead, the Board asserts concerns about the sheer number of Union members who will participate in the sessions, and whether the enormous potential size of the Bargaining Council—over two hundred people—will be unwieldy and thwart the effective and orderly progress of negotiations. By contrast, the governing body of the public employer may be prevented by Open Public Meetings Act limitations from having a quorum or more of its officials gather and take part in the sessions. N.J.S.A. 10:4-6 to -21.

As PERC expressly recognized in its decision, the Board has raised numerous concerns about safety and security, confidentiality, and other impediments that may arise if large numbers of the Union members are permitted to take part in the negotiations. It is unclear, for example, whether each of the two hundred or more Union members "participating" in the session would have the prerogative to speak out at the bargaining sessions at all times.

14

Would each employee, as a member of the Bargaining Council, have an individual right to demand that certain contract proposals be scuttled or advanced, even if the Union's negotiating team has a contrary strategy or position? How would order and confidentiality be maintained? If the sessions become unruly or disruptive would the Board be able to have disruptive Union members excluded from the room? Would PERC be available to intercede promptly on an application for emergent relief?

On the other hand, PERC's decision also expressly recognizes the importance of transparency, and, subject to confidentiality restrictions, providing an opportunity to members to see and hear how negotiations are conducted and whether their chosen Union leaders are carrying out their duty of fair representation.

These legitimate operational concerns are within the expertise of PERC as an administrative agency to address. It is not our role as a court to micro-manage the negotiations process. Although PERC did not see evidence in the present record that operational problems about the size of the Bargaining Council had yet arisen, PERC also recognized that reasonable limitations on the full rank-and-file's participation at bargaining sessions may prove to be warranted. Like PERC, we do not discern that the statutory scheme forbids such

15

reasonable limitations when they may be appropriate. State v. Harper, 229 N.J. 228, 237–38 (2017) (expressing the well-established principle that courts should strive to construe statutes in a sensible fashion that give meaning to all of their provisions).

In that vein, we therefore urge PERC to consider promulgating administrative regulations that address these legitimate concerns, and which may guide public employers and public employee unions in future bargaining sessions. Such regulations may be considered through the notice-and-comment process authorized by N.J.S.A. 52:14B-4 and N.J.A.C. 1:30-1.1 to -6.7. With respect to transparency concerns, we respectfully suggest that PERC consider whether the "livestreaming" of select portions of bargaining sessions may be a practical solution that could enable Union members to monitor the events at the sessions remotely without being physically present. We take no position on the substance of such possible regulations and render no advisory opinion. G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009) (disfavoring advisory opinions by courts).

We finally turn to PERC's declaration of an unfair labor practice on the part of the Board. Relevant to this appeal, the EERA defines "unfair practice" to include:

(1) Interfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act.

. . . .

(5) Refusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative.

[N.J.S.A. 34:13A-5.4(a).]

In assessing whether conduct constitutes an unfair practice, the totality of the evidence proffered and the competing interests of the public employer and the Union should be considered. Matter of Bridgewater Twp., 95 N.J. 235, 244 (1984) (citing Matter of E. Orange Pub. Library, 180 N.J. Super. 155, 160 (App. Div. 1981)); In re Bd. of Fire Comm'rs, 443 N.J. Super. 158, 174 (App. Div. 2015).

The record in this case does not reflect bad faith or anti-union bias by the Board. Both the Board and the Union took reasonably viable positions about whether the full membership of the Bargaining Council may be permitted to attend and actively participate in all of the contract negotiations. Both sides petitioned and cross-petitioned to have PERC resolve the novel questions presented. We discern no bad faith on the part of either side in seeking the

17

agency's guidance, not unlike a litigant who brings in good faith a case in the Superior Court under the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62.

Although PERC found the Board's concerns to be premature, the extensive caveats set forth in its decision reflect a recognition that those concerns stem from legitimate considerations. Given the circumstances, we conclude it was unreasonable to declare the Board's actions to comprise an unfair labor practice. Of course, if the Board had defied PERC's guidance and continued to refuse to meet with the Bargaining Council, that would have justified a finding of an unfair labor practice.

In sum, we affirm the agency's denial of the unfair labor practice charge against the Union and vacate its unfair practice charge against the Board, subject to the caveats wisely expressed in the final agency decision.

Affirmed in part and vacated in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1151-23